**Marcie T. LLERA, f/k/a, Marcie L. Taylor, Plaintiff,**

v.

**SECURITY CREDIT SYSTEMS, INC. and Mary Hedgeman, Defendants.**

No. CA–3:98CV–83MU.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 23, 2000.

John W. Taylor, Mitchell, Rallings, Singer, McGirt & Tissue, Charlotte, NC, for Plaintiffs.

William A. Blancato, McCall, Doughton & Blancato, PLLC, Winston-Salem, NC, for Defendants.

## *MEMORANDUM OPINION*

CACHERIS, Senior District Judge.[*]

At issue is whether a plaintiff who was awarded a $100.00 statutory penalty, but no actual damages, for a defendant's violation of the North Carolina fair debt collection statutes, can be considered a "prevailing party" and thereby entitled to attorney's fees. For the reasons stated below, the Court finds that (1) the Plaintiff in this case is not a prevailing party and (2) even if the Plaintiff was a prevailing party, the Court would deny her request for attorney's fees on other grounds.

### I.

Plaintiff, Marcie Llera, brought an action against Defendants, Security Credit Systems, Inc. and Mary Hedgeman, alleging violations of the federal Fair Debt Collection Practices Act ("the FDCA") and analogous North Carolina statutes. This case was one of mistaken identity, in which a collection agency attempted to collect a debt from the wrong "Marcie L. Taylor," Plaintiff's maiden name.

When the trial began, the federal claims were dismissed with prejudice, leaving only the claims brought under the North Carolina statute, N.C.Gen.St. §§ 58–70–95 through 58–70–125 (West Supp.1999). In addition, Plaintiff's claims of actual damages were withdrawn, meaning that only

[*] Sitting by designation.

her claims for statutory penalties remained.

After hearing the evidence, the jury returned a verdict for Plaintiff on only one of her seven claims. The jury found that Defendant Hedgeman had falsely represented to Plaintiff that the collection agency had verified her social security information, in violation of § 58–70–110(3). *See Llera v. Security Credit Systems, Inc., et al.*, CA–3:98CV–83MU, Verdict Sheet ¶ 5. The jury assessed a statutory penalty of $100.00, which was required under § 58–70–130(b), upon a showing that the Defendants violated any of §§ 58–70–95 through 58–70–125. The Court then requested briefs from the parties on the issue of whether Plaintiff is entitled to attorney's fees.

## II.

Under North Carolina law, debtors are protected from unfair debt collection practices. *See* N.C.Gen.St. §§ 58–70–1 *et seq.* and 75–1.1 *et seq.* Chapter 58, Article 70 does not set forth provisions for awarding attorney's fees. However, § 58–70–130(c) expressly refers to § 75–1.1, which contains an attorney's fee provision at § 75–16.1.[1] Section 75–16.1 states:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75–1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted re-

fusal by such party to fully resolve the matter which constitutes the basis of such suit.

N.C.Gen.St. § 75–16.1.

▐ Thus, based on the plain language of the statute, to recover attorney's fees under § 75–16.1, a plaintiff must prove the following: (1) that the plaintiff is a prevailing party; (2) that the defendant willfully engaged in the prohibited act; and (3) that the defendant's refusal to fully resolve the matter was unwarranted. A plaintiff must prove these factors by a preponderance of the evidence. *Standing v. Midgett*, 850 F.Supp. 396, 404 (E.D.N.C.1993).

In this case, Plaintiff prevailed on a § 58–70–110(c) claim rather than a claim brought under Chapter 75. Nonetheless, Plaintiff claims that she is entitled to reasonable attorney's fees pursuant to § 75–16.1, arguing that the interplay between Chapters 58 and 75, set forth at § 58–70–130(c), establishes that attorney's fees are available for violations of §§ 58–70–95 through 58–70–125. (Mem.Supp.Att. Fees at 2.)

Defendants contend that if the North Carolina legislature intended to provide for attorney's fees under Chapter 58, Article 70, it would have done so expressly. (Brief Opp.Mot.Att. Fees at 2.) In the alternative, even if § 75–16.1 applies, Defendants assert that Plaintiff is not entitled to attorney's fees because she cannot satisfy its requirements. (*Id.* at 3.) Finally, even if Plaintiff can satisfy § 75–16.1's requirements, Defendants argue, the Court should exercise its discretion and refuse to award attorney's fees in this case. (*Id.* at 8.)

▐ There are no reported cases discussing the applicability of § 75–16.1 to a violation under Chapter 58, Article 70. From a plain reading of the statutes it is

---

1. Section 58–70–130(c) states:

 The specific and general provisions of Part 3 of this Article[§§ 58–70–95 to 58–70–125] shall constitute unfair or deceptive acts or practices proscribed herein or by G.S. 75–1.1 in the area of commerce regulated thereby. Notwithstanding the provisions of

 G.S. 75–15.2 and 75–16, civil penalties in excess of two thousand dollars ($2,000) for each violation shall not be imposed, nor shall damages be trebled for any violation under Part 3 of this Article.

 N.C.Gen.St. § 58–70–130(c) (alteration added).

not absolutely clear that the attorney's fees provision set forth at § 75–16.1 applies to violations of §§ 58–70–95 through 58–70–125. Section 58–70–130(c) states that a violation of those sections "shall constitute unfair or deceptive acts or practices proscribed ... by G.S. § 75–1.1." Yet, § 75–16.1 states that attorney's fees under that section shall be available for "any suit instituted by a person who alleges that the defendant violated G.S. § 75–1.1."

Plaintiff in this case did not allege a violation of § 75–1.1. However, it may have been assumed that such an allegation was implicit in any alleged violation of Chapter 58, Article 70 in light of the language of § 58–70–130(c), referencing § 75–1.1. As such, the Court finds that attorney's fees are available for plaintiffs alleging violations of Chapter 58, Article 70 who can satisfy the requirements set forth at § 75–16.1.

However, although § 75–16.1 is applicable in this case, Plaintiff cannot satisfy its requirements. The Court finds that Plaintiff is not a "prevailing party" within the meaning of § 75–16.1. The Court also finds that Defendant's refusal to fully resolve the matter was not unwarranted. Finally, even if Plaintiff satisfied the requirements of § 75–16.1, the Court, in its discretion, finds that attorney's fees are not warranted in this case in light of Plaintiff's limited "victory."

The Court will address each of these issues in turn, beginning with the determination of whether Plaintiff is a prevailing party.

## A. Prevailing Party

■ To qualify as a prevailing party under § 75–16.1, Plaintiff must prove: (1) an actual violation of § 75–1.1; and (2)

that she suffered an actual injury as a result of the violation. *Custom Molders, Inc. v. American Yard Products, Inc.*, 342 N.C. 133, 141, 463 S.E.2d 199, 204 (1995); *Evans v. Full Circle Productions, Inc.*, 114 N.C.App. 777, 781, 443 S.E.2d 108, 110 (1994); *Mayton v. Hiatt's Used Cars, Inc.*, 45 N.C.App. 206, 212, 262 S.E.2d 860, 863 (1980).

## 1) Violation of § 75–1.1

As explained above, a violation of Chapter 58, Article 70 "shall constitute unfair or deceptive acts or practices proscribed ... by G.S. § 75–1.1," thereby entitling a plaintiff to attorney's fees under § 75–16.1. In this case, the jury found that Defendants had violated § 58–70–110(3).[2] *See Llera*, Verdict Sheet ¶ 5. As such, the Court finds that Plaintiff satisfies the "violation" requirement of the prevailing party analysis.

## 2) Actual Injury

■ Although Plaintiff proved a violation, for the reasons set forth below, the Court finds that Plaintiff failed to prove that she suffered any actual injury and, therefore, cannot be considered a prevailing party. Upon its finding that Defendants violated the fair debt collection statute, the jury assessed a $100.00 statutory penalty. *See Llera*, Verdict Sheet ¶ 5. This was the minimum assessment permitted for the mandatory penalty set forth at § 58–70–130(b). *See infra* note 3. However, the jury did not award any actual damages because Plaintiff withdrew her request for actual damages at trial.

No reported cases have considered whether a plaintiff who received a statutory penalty but no actual damages can be a "prevailing party" under § 75–16.1. However, the existing caselaw suggests that a

---

2. That section states, in pertinent part:
 No collection agency shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following:

*** 
(3) Falsely representing that the collection agency has in its possession information or something of value for the consumer.
N.C.Gen.St. § 58–70–110(c).

plaintiff must be awarded actual damages in order to prove an actual injury. *See Bailey v. LeBeau*, 79 N.C.App. 345, 352, 339 S.E.2d 460, 464, *modified and aff'd*, 318 N.C. 411, 348 S.E.2d 524 (1986) (holding that evidence of misrepresentation alone did not establish injury); *Mayton*, 45 N.C.App. at 212, 262 S.E.2d at 863 (holding that absence of award of actual damages precludes plaintiff from being a prevailing party).

The Court is reluctant to rely entirely on *Bailey* and *Mayton* because those cases did not deal with the statutory penalty. But given the mandatory nature of § 58–70–130(b), the Court finds that the penalty assessed *in this case* was insufficient to prove that Plaintiff suffered an "actual injury." In other words, the Court is not convinced that the assessment of a $100.00 penalty satisfies the "actual injury" requirement.

The plain language and disjunctive structure of § 58–70–130 suggest that actual damages are to be considered as being separate and distinct from the statutory penalty.[3] An award of actual damages is contingent on some harm having been suffered by the plaintiff, whereas the penalty is mandatory.[4] As such, the penalty does not necessarily provide evidence to assist a trial court in determining whether a plaintiff suffered an actual injury.

This distinction between actual damages and penalties is true as a general principle. Actual damages constitute "compensation for actual injuries or loss," denoting "the type of damage award as well as the nature of injury for which recovery is allowed; thus, actual damages flowing from injury in fact are to be distinguished from damages which are nominal, exemplary or punitive." Black's Law Dictionary 33 (5th ed.1979). Under a penalty, "an individual is allowed to recover against a wrongdoer as satisfaction for wrong or injury suffered, *without reference to actual damage sustained.*" *Id.* at 1266 (alteration added).

The Court's view that a statutory penalty does not necessarily prove actual injury finds expression under other statutory schemes as well.[5] Nonetheless, it may be argued that the North Carolina legislature intended the assessment of a penalty under § 58–70–130(b) to qualify a plaintiff as a "prevailing party." Such a reading of § 58–70–130(b) would comport § 75–16.1's intent to encourage citizens to act as private attorneys general in enforcing the statutes through individual civil actions. *See Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E.2d 677 (1985); *Mar-*

---

3. Section 58–70–130 states, in pertinent part:

 (a) Any collection agency which violates Part 3 of this Article[, §§ 58–70–95 to 58–70–125,] with respect to any debtor shall be liable to that debtor in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.
 (b) Any collection agency which violates Part 3 of this Article[, §§ 58–70–95 to 58–70–125,] with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and its additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100.00) for each violation nor greater than two thousand dollars ($2,000) for each violation.
 N.C.Gen.St. § 58–70–130 (alterations added).

4. The statute sets forth that the penalty is to be assessed as a matter of course, upon a trier of fact's finding that a collection agency violated any of §§ 58–70–95 through 58–70–125, without regard to a plaintiff's actual injuries.

5. *See, e.g., Chevron USA, Inc. v. Yost*, 919 F.2d 27, 30 (5th Cir.1990) (stating that the civil penalty under the Clean Water Act, 33 U.S.C. § 1321(b)(3) and (4), offers no proof of actual injury to the environment); *Fenner v. Favorite Brand Intern., Inc.*, 25 F.Supp.2d 870, 875 (N.D.Ill.1998) (stating that plaintiff may recover civil penalty provided under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(c), even if he has suffered no injury); *Woolfolk v. Van Ru Credit Corp.*, 783 F.Supp. 724 (D.Conn.1990) (holding that award of additional damages under the Fair Debt Collection Act, 15 U.S.C. § 1692k, provides no proof of actual damages).

shall v. Miller, 302 N.C. 539, 276 S.E.2d 397 (1981).

However, such an application of § 58–70–130(b) would significantly alter the substance of § 75–16.1's "prevailing party" test as it currently exists, because it would strip away the actual injury requirement for an entire class of plaintiffs. The Court will not alter the prevailing standards established by the legislature and courts of North Carolina without some authoritative basis for doing so, and the Plaintiff has failed to cite any legislative history or other authority to support her suggested interpretation of these statutes.

Indeed, the assessment of a civil penalty in other contexts is sufficient to render attorney's fees available. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (stating that civil rights plaintiff need only "obtain at least some relief on the merits of his claim" to be a "prevailing party" under 42 U.S.C. § 1988); *Johnson v. Eaton*, 80 F.3d 148, 150–51 (5th Cir.1996) (stating attorney's fees are available under Fair Debt Collection Act ("FDCA"), 15 U.S.C. § 1692k(3), for a plaintiff bringing a "successful action"—which is satisfied if *either* actual damages or additional damages are awarded). However, the question to be answered under the "prevailing party" inquiry of § 75–16.1 is whether there is proof of the plaintiff's actual loss, not simply whether the plaintiff was awarded "something." This more rigorous requirement under § 75–16.1 is clearly valid. The "American rule" rejects any claim of right to an award of attorney's fees. As such, legislatures and courts are free to craft individualized standards for awarding attorney's fees to suit the felt needs of a particular statutory scheme.[6]

Shifting the analysis from the abstract to the concrete, the facts in this case support this Court's conclusion that the assessment of a $100.00 penalty was insuffi-

cient to prove that Plaintiff suffered an actual injury. At trial, Plaintiff withdrew her claim of actual damages. The jury found the Defendants liable on only one of seven counts. On that lone count, the jury was required to assess a penalty, which it set at the minimum amount permitted under the statute. In the Court's view of the evidence presented at trial, there was absolutely no proof that Plaintiff suffered any mental anguish or other actual injury because of Defendants' violation. Given these facts, the Court finds that the jury's assessment of the statutory penalty was insufficient to prove by a preponderance of the evidence that Plaintiff suffered an actual injury. As such, Plaintiff is not entitled to recover attorney's fees under § 75–16.1.

**B. Defendants' Refusal to Resolve the Matter Before Trial**

 The Court also finds that Defendants' refusal to fully resolve the matter was not unwarranted. In determining whether there was an unwarranted refusal to resolve, courts may look to a defendant's efforts to settle a matter prior to trial and the reasonableness of those efforts. *See Leftwich v. Gaines*, 134 N.C.App. 502, 521 S.E.2d 717, 729 (1999); *Lapierre v. Samco Development Corp.*, 103 N.C.App. 551, 560–61, 406 S.E.2d 646, 651 (1991); *United Laboratories, Inc., v. Kuykendall*, 102 N.C.App. 484, 495, 403 S.E.2d 104, 111 (1991). A defendant's general intractability as to resolving the disputed matter may constitute an unwarranted refusal to resolve. *Barbee v. Atlantic Marine Sales & Service, Inc.*, 115 N.C.App. 641, 649, 446 S.E.2d 117, 122 (1994).

Plaintiff never quantified the amount of her claimed damages. In her trial brief, she stated only that she sought actual damages for mental anguish and statutory penalties for Defendants' violations of federal and state law. (Plaintiff's Trial Brief

---

6. For example, even under the FDCA and 42 U.S.C. § 1988, trial courts maintain the discretion to deny attorney's fees to a "prevailing

party." *See Farrar*, 506 U.S. at 114–15, 113 S.Ct. 566; *Johnson*, 80 F.3d at 152.

at 9–10.) Defendants attempted to settle this case on two occasions by making a Rule 68 Offer of Judgment.[7] Defendants first attempted to settle this matter on September 16, 1998, offering $2,250.00 to cover "all damages, costs, interest, attorney's fees or other monetary award which plaintiff may be entitled to recover." (Brief Opp.Mot.Att. Fees at Ex. 1.) However, Plaintiff failed to respond to the offer or to present a counter-offer. (Affidavit of William Blancato ¶ 5.) At a subsequent pretrial conference, Defendants' counsel brought the settlement offer to the Court's attention. Chief Judge Mullen, who presided over the conference, stated that the amount seemed reasonable. (*Id.*) Still, Plaintiff made no counter-offer. (*Id.*)

On September 9, 1999, almost one year after the initial settlement offer was made, Defendant's counsel again contacted Plaintiff's counsel in writing to confirm that there had been no counter-offer made with respect to Defendants' initial settlement offer. (Brief Opp.Mot.Att. Fees at Ex. 3.) Finally, on September 23, 1999, four days before trial briefs were due in this case and one full year after the initial settlement offer was made, Plaintiff notified Defendants that her settlement demand was $12,991.30—$6,000.00 in damages, $5,858.50 in attorney's fees, and $1,131.80 in costs. (*Id.* at Ex. 4.) On October 1, 1999, Defendants counter-offered with a sum of $5,000.00 for damages, fees and costs. (*Id.* at Ex. 5.) Plaintiff refused this offer.

On the day of trial, this Court encouraged the parties to try to settle the matter, but the difference was too great between what Defendants were willing to offer and what Plaintiff was willing to accept. The

Court cautioned Plaintiff at that time that she might not prevail, but Plaintiff maintained that she was prepared to go to trial. As stated above, the jury found Defendants not liable on six of seven counts and awarded Plaintiff only the minimum required statutory penalty—$100.00.

Plaintiff contends that Defendants made it clear that they had no intention of actually settling this case. As proof, Plaintiff asserts that the first settlement offer was a token gesture, not intended to resolve the matter before trial. (Mem.Supp.Att. Fees at 4.) At the time of Defendants' first offer, Plaintiff claims that attorney's fees already totaled $3,371.50 and costs amounted to $150.00, which far exceeded Defendants' offer of judgment without any regard to Plaintiff's damages. (*Id.*)

Regardless of the substance of Defendants' first settlement offer, the Court does not agree with Plaintiff's view of the parties' attempts to settle this case. Plaintiff's failure to counter-offer for more than one year suggests that Defendants' failure to resolve this matter was not unwarranted. Plaintiff failed to do her part to foster a negotiation in this case. Plaintiff has the burden to prove that Defendants' refusal to settle was unwarranted. *Standing v. Midgett*, 850 F.Supp. at 404. Once Defendants made their first offer, Plaintiff had a duty to counter-offer in a timely fashion, at least insofar as Plaintiff hoped to enjoy the fruits of § 75–16.1's attorney's fee provision. The risk of not making a counter-offer was to create the appearance that Defendants' refusal to settle was not unwarranted.

Even if the first offer was low, there is no proof that it was "a token gesture" because Plaintiff failed to test Defendants'

---

7. Rule 68 states, in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse

party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.

F.R.Civ.P. 68.

resolve with a timely counter-offer. The Court can only speculate as to the outcome of such a counter-offer. Regardless, given the reality of the parties' attempts to avoid trial, the Court cannot say that Defendants were unwarranted in their failure to resolve the matter. If anything, Plaintiff's conduct constituted an unwarranted refusal to settle, particularly after Chief Judge Mullen indicated that the settlement offer seemed reasonable. As such, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendants were unwarranted in their refusal to settle this matter before trial.

## C. Court's Discretion to Deny Attorney's Fees

■ As stated, even if Plaintiff was able to prove the elements required under § 75–16.1, the Court would deny Plaintiff's Motion for Attorney's Fees. An award of attorney's fees under § 75–16.1 is within the sound discretion of the trial judge. Even where facts exist to support a finding that Plaintiff has satisfied the requirements of § 75–16.1, a court may deny attorney's fees. *Shell Oil Co. v. Commercial Petro., Inc.,* 928 F.2d 104, 108, n. 6 (4th Cir.1991); *Evans v. Full Circle Prods., Inc.,* 114 N.C.App. 777, 781, 443 S.E.2d 108, 110 (1994); *Concrete Serv. Corp. v. Investors Group, Inc.,* 79 N.C.App. 678, 687–88, 340 S.E.2d 755, 761, *cert. denied,* 317 N.C. 333, 346 S.E.2d 137 (1986); *Borders v. Newton,* 68 N.C.App. 768, 770, 315 S.E.2d 731, 732 (1984). *Cf. Farrar,* 506 U.S. at 113–16, 113 S.Ct. 566 (recognizing a court's inherent power to deny attorney's fees to prevailing party under 42 U.S.C. § 1988); *Bumgardner v. Lite Cellular,* 996 F.Supp. 525, 529, n. 5. (E.D.Va.1998).

■ At trial, all of Plaintiff's FDCA claims were dismissed with prejudice, Plaintiff's husband was dismissed as a named Plaintiff, the claims against one of the named Defendants were dismissed with prejudice, and Plaintiff abandoned her claims of actual damages. All that remained of the case were Plaintiff's claims for statutory damages for the Defendants' alleged violations of the North Carolina fair debt collection statute. It was clear from the evidence at trial that Plaintiff suffered no actual injury but only wished to recover the statutory penalty on Defendants alleged violations. This she had every right to do. However, the evidence of the alleged violations was weak and Plaintiff proved only one violation.

Plaintiff pressed forward with trial in this case after receiving two offers of judgment from the Defendants. In addition, she was warned by Chief Judge Mullen during a pretrial conference that settlement seemed wise in this case. She was warned again by this Court just before the trial began that she risked recovering nothing in this case. Undaunted by these voices of reason, Plaintiff rolled the dice and moved forward to trial. Although she was seeking $14,000.00 in statutory penalties, she recovered only $100.00—$2,150.00 less than Defendants' original settlement offer and $4,900.00 less than the second settlement offer.

The North Carolina Court of Appeals has recognized that § 75–16.1:

> as it now stands, potentially poses a dilemma for plaintiffs who have to choose either to accept the offer of judgment and lose the opportunity to recover attorney's fees, or in the alternative, reject the offer of judgment and have to pay her [sic] attorney and possibly costs of Defendants' counsel. On the other hand, we also recognize that [§ 75–16.1] apparently has been designed to award attorney's fees in extreme cases, since even when the statutory requirements are met, an award of attorney's fees is within the trial court's discretion.

*Evans,* 114 N.C.App. at 781–82, 443 S.E.2d at 110. Indeed, Plaintiff may have found herself caught in this dilemma. However, she could have accepted either of Defendants' settlement offers and made out *far* better than she did at trial.

Of course, hindsight has perfect vision and Plaintiff's unfavorable outcome at trial cannot be the sole grounds for the Court's decision to deny attorney's fees. It is not. Based on the evidence presented at trial, this case involved a minor violation of the North Carolina fair debt collection statute. Rather than settle, Plaintiff attempted to amass a tidy sum in civil penalties and also obtain attorney's fees. She was not successful. In analogous situations, attorney's fees are properly denied. *See Farrar,* 506 U.S. at 113-16, 113 S.Ct. 566; *Bumgardner v. Lite Cellular,* 996 F.Supp. at 529, n. 5.

### III.

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to attorney's fees both under § 75–16.1 and as a matter of this Court's sound discretion. As such, Plaintiff's Motion for Attorney's fees is DENIED. An appropriate Order will issue.