JOHN E. MARSHALL, MARNA J. MARSHALL, DEVON G. BELL, RHONDA T. ROGERS, EDWARD L. HOWELL, AMON G. STEWART, BETTY J. STEWART, AND G. C. BROWN v. ERNEST W. MILLER, AND WIFE, JANE D. MILLER, INDIVIDUALLY AND D/B/A SPANISH TRAILS, ALIAS SPANISH TRAILS MOBILE HOME PARK, AND IRA GROSSMAN

No. 72

(Filed 7 April 1981)

**Unfair Competition § 1— unfair trade practices — good faith irrelevant**

In determining whether a violation of G.S. 75-1.1 has occurred, the question of whether the defendant acted in bad faith is not pertinent, and the character of the plaintiff, whether public or private, should not alter the scope of the remedy under this statute.

ON petition for discretionary review of a decision of the Court of Appeals, 47 N.C. App. 530, 268 S.E. 2d 97 (1980), vacating a judgment by *Alexander, J.* at the 18 September 1979 Session of

District Court, GUILFORD County in favor of plaintiffs and award-ing defendants a new trial. Plaintiffs' petition for discretionary review was denied 4 November 1980. The Attorney General filed a motion for reconsideration of that denial on 24 November 1980 asking that this Court grant discretionary review for the limited purpose of considering whether the Court of Appeals erred in hold-ing that proof of bad faith is required to establish a violation of G.S. 75-1.1. We allowed discretionary review for that limited purpose on 6 January 1981.

*Attorney General Rufus L. Edmisten by Special Deputy Attor-ney General John R. B. Matthis, Assistant Attorney General Alan S. Hirsch and Assistant Attorney General James C. Gulick, amicus curiae, for the State.*

*Edwards, Greeson, Weeks & Turner by Joseph E. Turner for plaintiff appellants.*

*Hatfield, Hatfield & Kinlaw by John B. Hatfield, Jr. and Kathryn K. Hatfield for defendant appellees.*

MEYER, Justice.

Plaintiffs, residents of a mobile home park in Greensboro, North Carolina, bring this action seeking damages from defend-ants, owners and managers of the park. Each of the plaintiffs seeks damages for certain misrepresentations allegedly made by defend-ants concerning services which defendants would provide to plain-tiffs, lessees of lots in the mobile home park. Plaintiffs offered evidence, and the jury found as fact, that defendants had led plain-tiffs to believe that they would be furnished the following services or amenities by the mobile home park: two playgrounds, one bas-ketball court, one swimming pool, adequate garbage facilities and pickup, complete yard care, paved and lighted streets and common facilities. The jury further found that, during the period between 7 October 1974 and the filing of this action on 7 October 1977, defend-ants had failed to provide any of those facilities or services. Based on these findings of fact by the jury, Judge Alexander determined as a matter of law that certain of defendants' misrepresentations consti-tuted unfair or deceptive acts or practices in or affecting commerce within the meaning of G.S. 75-1.1. The procedure to be followed by trial courts, that the jury find facts upon which the trial judge bases conclusions of law as to whether a practice is proscribed by G.S.

75-1.1, was outlined by this Court in *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). Judge Alexander, following this procedure, determined that the defendants had engaged in unfair and deceptive practices, and damages assessed by the jury were trebled pursuant to G.S. 75-16.

The Court of Appeals found error in several of the issues submitted to the jury. Our review is limited to Issue No. 4, which was as follows:

> Did the defendant, after October 7, 1974, without the intent and/or the ability to perform lead the plaintiffs or any of them to believe that he would provide the following equipped facilities for their use, reasonable wear and tear accepted (sic)?

(a) Two playgrounds

ANSWER: Yes.

(b) One basketball court

ANSWER: Yes.

(c) One swimming pool

ANSWER: Yes

(d) Household water

ANSWER: No

(e) Adequate garbage facilities and pickup

ANSWER: Yes

(f) Complete yard care, that is, mowing and trimming

ANSWER: Yes

(g) Paved streets

ANSWER: Yes

(h) Lighted streets

ANSWER: Yes

(i) Common facilities

ANSWER: Yes

The Court of Appeals deemed that statement of the issue erroneous because defendants could be adjudged to have committed unfair or deceptive acts without a showing that they acted in bad faith.

In determining that bad faith was an essential element of plaintiffs' claim, the Court of Appeals recognized that G.S. 75-1.1(a) closely follows the portion of Section 5 of the Federal Trade Commission Act codified at 15 U.S.C. § 45(a) (1) (hereinafter FTC Act). In fact, the language of our statute is identical to that section of the FTC Act. Both acts further provide for government enforcement, our state Act through actions brought by the Attorney General to obtain mandatory orders. (G.S. 75-14). The court may impose civil penalties in suits instituted by the Attorney General in which the defendant is found to have violated G.S. 75-1.1 and the "acts or practices which constituted the violation were, when committed, specifically prohibited by a court order or knowingly violative of a statute." G.S. 75-15.2. Unlike our own statutory scheme, however, the FTC Act confers no private right of action upon an injured party. *Holloway v. Bristol-Myers Corp.*, 485 F. 2d 986 (D.C. Cir. 1973); *Carlson v. Coca Cola Co.*, 483 F. 2d 279 (9th Cir. 1973). Rather, the provisions for private enforcement found in our statute are more closely analogous to Section 4 of the Clayton Act, which provides for private suits with treble damage recovery for violation of federal antitrust laws. 15 U.S.C. § 15 (1976).

It is established by earlier decisions of this Court that federal decisions interpreting the FTC Act may be used as guidance in determining the scope and meaning of G.S. 75-1.1. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980); *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). Federal courts have uniformly held that the FTC may issue a cease and desist order to enforce Section 5 where an act or practice has a capacity to deceive, regardless of the presence or absence of good faith on the part of the offending party. *Chrysler Corp. v. F.T.C.*, 561 F. 2d 357, 363 (D.C. Cir. 1977); *Doherty, Clifford, Steers & Shenfield, Inc. v. F. T. C.*, 392 F. 2d 921 (6th Cir. 1968); *Montgomery Ward & Co. v. F.T.C.*, 379 F. 2d 666 (7th Cir. 1967). Although recognizing the precedential value of FTC decisions, the Court of Appeals held that, because our state Act provides for a private action, federal decisions to the effect that

Marshall v. Miller

bad faith was not necessary to show a violation of the FTC Act were not dispositive. Good faith, said the Court of Appeals, may be irrelevant where the Attorney General seeks injunctive relief under G.S. 75-14, a remedy analogous to an FTC cease and desist order, but it should be relevant where a party is potentially liable in a private action for treble damages under G.S. 75-16. Our task is to determine whether the intent of the Legislature will be more fully served if the addition of a private action under our statute brings with it a concomitant requirement that a private party must show bad faith in order to recover treble damages. In resolving that question, we are guided by two other questions: (1) what was this State's unfair and deceptive trade practice act intended to accomplish, and (2) how can the purpose for which the law was passed be most fully realized.

Between the 1960's and the present, North Carolina was one of forty-nine states to adopt consumer protection legislation designed to parallel and supplement the FTC act. Leaffer and Lipson, *Consumer Actions Against Unfair or Deceptive Acts or Practices: The Private Uses of Federal Trade Commission Jurisprudence*, 48 Geo. Wash. L. Rev. 521 (1980). The statute enacted in North Carolina in fact had its genesis in the first of several alternative forms suggested to the states by the Federal Trade Commission and the Committee on Suggested State Legislation of the Council of State Governments. Council of State Governments, Suggested State Legislation (Vol. XXIX 1970); Lovett, *State Deceptive Trade Practices Legislation*, 46 Tulane L. Rev. 724, 732 (1972). The Commission encouraged state-level legislation because it recognized that enforcement of the FTC Act's broad Section 5 proscription against "unfair or deceptive acts or practices" could not possibly be accomplished without extra-agency assistance. L. Richie & H. I. Saferstein, Private Actions for Consumer Injury Under State Law—The Role of the Federal Trade Commission, in FTC Trade Regulation—Advertising, Rulemaking and New Consumer Protection 415 (PLI 1979). In enacting G.S. 75-16 and G.S. 75-16.1, our Legislature intended to establish an effective private cause of action for aggrieved consumers in this State.

Such legislation was needed because common law remedies had proved often ineffective. Tort actions for deceit in cases of misrepresentation involved proof of scienter as an essential element and were subject to the defense of "puffing." Comment, *Maryland's*

*Consumer Protection Act: A Private Cause of Action for Unfair or Deceptive Trade Practices*, 38 Md. L. Rev. 733, 734 (1979). Proof of actionable fraud involved a heavy burden of proof, including a showing of intent to deceive. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). Actions alleging breach of express and implied warranties in contract also entailed burdensome elements of proof. *See* Langer & Ormstedt, *The Connecticut Unfair Trade Practices Act*, 54 Conn. B. J. 338 (1980). A contract action for rescission or restitution might be impeded by the parol evidence rule where a form contract disclaimed oral misrepresentations made in the course of a sale. Use of a product after discovery of a defect or misrepresentation might constitute an affirmance of the contract. Any delay in notifying a seller of an intention to rescind might foreclose an action for rescission. Richie and Saferstein, *supra* at 416-17. Against this background, and with the federal act as guidance, North Carolina and all but one of her sister states have adopted unfair and deceptive trade practices statutes. Richie & Saferstein, *supra* at 441.

In its opinion, the Court of Appeals sought to draw a distinction between actions brought by the Attorney General and private actions brought by aggrieved consumers. Careful examination of the applicable precedent in this jurisdiction and our interpretation of the intent of the Legislature leads us to conclude that, in determining whether a violation of G.S. 75-1.1 has occurred, the question of whether the defendant acted in bad faith is not pertinent. The character of the plaintiff, *i.e.* whether public or private, should not alter the scope of the remedy under this statute.

As authority for finding bad faith to be an essential element in a private cause of action under G.S. 75-1.1, Judge Parker cited *Trust Co. v. Smith*, 44 N.C. App. 685, 262 S.E. 2d 646 (1980) and *United Roasters Inc. v. Colgate Palmolive Co.*, 485 F. Supp. 1049 (E.D.N.C. 1980). In *Smith*, defendants, defaulting obligors on a note used to secure the purchase of a mobile home, filed a third party claim against the dealer who sold them the mobile home, alleging that the sale of the home and dealer's failure to perform certain services constituted unfair or deceptive trade practices in violation of G.S. 75-1.1. At the close of all evidence, the trial court granted defendant dealer's motion for summary judgment on that issue. The Court of Appeals affirmed the trial court, saying that even if plaintiff's allegations were true, that would only constitute a breach

of warranty, and such a breach standing alone does not constitute a violation of Chapter 75. 44 N.C. App. at 691, 262 S.E. 2d at 650. The court also said:

> We need not decide now what specific actions, if any, which do not constitute fraud, would nonetheless be a violation of G.S. 75-1.1. Nevertheless, under the evidence presented *in this case*, absent evidence of willful deception or bad faith, we cannot conclude that the existence of defects in the mobile home or Tunstall's failure to perform the above stated services constitutes a violation of G.S. 75-1.1 to warrant the award of treble damages under G.S. 75-16. Assuming *arguendo* that such facts, if established, constitute a breach of warranty, *a breach alone does not constitute a violation of Chapter 75*, and it is, therefore, inappropriate to treble damages resulting solely from the breach. (Citation omitted).

*Id.* (Emphasis added).

Appellants contend, and Judge Parker agreed, that that language requires a showing of bad faith in order for a party to recover treble damages. We do not agree for two reasons. First, the court there clearly limited its opinion to the facts of the case before it. Second, in *Smith* the alleged deceptive acts had occurred and suit had been filed prior to the amendment to G.S. 75-1.1 adopted by the Legislature in 1977. The form of G.S. 75-1.1 (a) and (b) controlling in *Smith* read as follows:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

> (b) The purpose of this section is to declare, and to provide civil means to maintain, ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, *to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.* (Emphasis added).

Any inference in *Smith* that bad faith is an essential element of a cause of action under G.S. 75-1.1 may have been based on the emphasized language found in section (b). We do not feel that

former section (b) supports such a holding. Thus any possible implication in *Smith* that a party must show bad faith in order to recover treble damages for a violation of G.S. 75-1.1 is expressly overruled.[1]

*United Roasters*, also relied on by the Court of Appeals, presents a more difficult question. In that case before a United States District Court, plaintiff complained of alleged unfair competition by defendant in breaching a contract between the parties, and moved for treble damages. Judge Maletz, sitting by designation, ruled that under North Carolina law treble damages were only recoverable where a jury finds intentional wrongdoing on the part of defendant. Judge Maletz reached that result by analyzing three North Carolina cases: *Stone v. Paradise Park Homes, Inc.*, 37 N.C. App. 97, 245 S.E. 2d 801, *cert. denied*, 295 N.C. 653, 248 S.E. 2d 257 (1978); *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975); and *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *cert. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978). While it is true that in each of those cases the jury had found, or the parties had stipulated, that defendant had acted intentionally, we do not find, as did Judge Maletz, that these cases establish that intentional wrongdoing is necessary in order to find a violation of G.S. 75-1.1. It simply shows that the previous cases involved defendants whose actions were so egregious as clearly to have been in bad faith.

Nor do we concur in Judge Maletz's conclusion that, because G.S. 75-16 is punitive in nature, the "requirement of a jury finding of intentional wrongdoing to constitute a violation of the statute is consistent with the position of the courts of North Carolina generally concerning punitive damages." 459 F. Supp. at 1059. To begin with, it is an oversimplification to characterize G.S. 75-16 as punitive. The statute is partially punitive in nature in that it clearly serves as a deterrent to future violations. But it is also remedial for other reasons, among them the fact that it encourages private enforcement and the fact that it provides a remedy for aggrieved parties. It is, in effect, a hybrid. *State Ex. Rel. Edmisten v. J. C. Penney Co.*, 292 N.C. 311, 319, 233 S.E. 2d 895, 900 (1977); *Holley v. Coggin Pontiac*, 43 N.C. App. 229, 237, 259 S.E. 2d 1, 6-7 (1979).

As it is a hybrid statute, providing a remedy for an entirely statutory cause of action, analogies to other rules of common law

---

[1] We note that the amendment to G.S. 75-1.1, effective 27 June 1977, deleted *all* of the language of (b) quoted above.

governing the imposition of punitive damages should not control. More significantly, whereas common law actions grounded in tort or contract *allow* both actual and multiple damages, G.S. 75-16 provides in effect that any actual damages assessed *shall* be trebled by the trial court if a violation of G.S. 75-1.1 is found. Many of our sister states provide that the awarding of exemplary or treble damages shall be proper only upon a finding of intentional wrongdoing. *See* Conn. Gen. Stat. Ann. § 42-110g (West Cum. Supp. 1980) (punitive damages in the discretion of the court); Ga. Code Ann. § 106-1210 (Cum. Supp. 1980) (if violation was "intentional" exemplary damages allowed); La. Rev. Stat. Ann. § 51:1409 (West Cum. Supp. 1981) (if deceptive act knowingly used, damages trebled); Mass. Gen. Laws Ann. Ch. 93A § 11 (West Cum. Supp. 1981) (if act willful or knowing, damages may be trebled); S.C. Code § 39-5-140 (1976) (if violation willful or knowing, actual damages trebled); Tenn. Code Ann. § 47-18-109 (1979) (if violation willful or knowing, actual damages trebled); Tex. [B&C] Code Ann. tit. 2, § 17.50(b)(1) (Cum. Supp. 1980) (if violation done knowingly, trier of fact may treble the amount of actual damages under $1,000.00).

Absent statutory language making trebling discretionary with the trial judge, we must conclude that the Legislature intended trebling of any damages assessed to be automatic once a violation is shown. To rule otherwise would produce the anomalous result of recognizing that although G.S. 75-1.1 creates a cause of action broader than traditional common law actions, G.S. 75-16 limits the availability of any remedy to cases where some recovery at common law would probably also lie.

Nor do we find the fact that a violation of any provision of the Retail Installment Sales Act, G.S. Chapter 25A, is only a violation of G.S. 75-1.1 when it is "knowing and willful" probative on the issue before us. As correctly argued by the Attorney General, full compliance with that Act requires meeting a number of technical requirements. It is therefore not inconsistent with our decision today that, by statute, only a knowing and willful violation of that Act constitutes an unfair or deceptive trade practice. Equally significant is the fact that in many instances the Legislature has declared that violation of certain statutes also constitutes a violation of G.S. 75-1.1, without any requirement of intentional wrongdoing. *See, e.g.*, G.S. 66-100(e) (violation of any provisions of the Business Opportunity Sales statute); G.S. 66-111(d) (violation of any provision of the

Marshall v. Miller

Loan Brokers statute); G.S. 66-125(c) (violation of any provision of the Prepaid Entertainment Contracts statute).

Most of the prior reported decisions interpreting G.S. 75-1.1 have dealt with the scope of the statute. *See, e.g., State ex rel. Edmisten v. J. C. Penney Co.*, 292 N.C. 311, 233 S.E. 2d 895 (1977); *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977). But in *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980), this Court addressed the question of what, as a matter of law, makes a trade practice "unfair or deceptive." Justice Britt, writing for the Court, began his analysis of that question by noting that the meaning of the terms is not enunciated by the FTC Act, but that "[i]t is critical that the generality of the standards of illegality be noted." *Id.* at 262, 266 S.E. 2d at 620 (citations omitted).

Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. *Id.* at 262-63, 266 S.E. 2d at 621. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.* at 263, 266 S.E. 2d at 621. As also noted in *Johnson*, under Section 5 of the FTC Act, a practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. *Id.* at 265, 266 S.E. 2d at 622; *Trans World Accounts, Inc. v. Federal Trade Commission*, 594 F. 2d 212 (9th Cir. 1979); *Resort Car Rental System, Inc. v. Federal Trade Commission*, 518 F. 2d 962 (9th Cir.), *cert. denied sub nom MacKenzie v. United States*, 423 U.S. 827 (1975). Consistent with federal interpretations of deception under Section 5, state courts have generally ruled that the consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception, in order to prevail under the states' unfair and deceptive practices act. *Johnson v. Insurance Co.*, 300 N.C. 247, 265-66, 266 S.E. 2d 610, 622 (1980); Annot. 89 ALR 3d 449, 465; *see Leaffer and Lipson, supra* at 535 and the numerous cases cited in n. 87.

If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public. Consequently, good faith is not a defense to an alleged violation of G.S. 75-1.1.

As mentioned above, the Court of Appeals felt that, as this was a private action rather than one instituted by the Attorney General, good faith was a proper defense. There is some authority in other jurisdictions for such a distinction. *See, e.g., Bartner v. Carter*, 405 A. '2d 194 (Me. 1979) (where "loss of money or property" is an essential element of the claim, private action showing mere proof of capacity to deceive is insufficient).

We reach the contrary result for several reasons. First, nothing in our earlier decisions in *Hardy* and *Johnson* limits the precedential value of FTC jurisprudence to cases or actions brought by the Attorney General. Indeed, both cases actually involved private litigants. Second, unlike statutes enacted by some of our sister states, there is no explicit statutory requirement of a showing of bad faith in G.S. 75-1.1. Finally, as discussed above, under the standards for determining what is unfair and deceptive according to *Johnson*, the intent or good faith belief of the actor is irrelevant.

In an area of law such as this, we would be remiss if we failed to consider also the overall purpose for which this statute was enacted. The commentators agree that state statutes such as ours were enacted to supplement federal legislation, so that local business interests could not proceed with impunity, secure in the knowledge that the dimensions of their transgression would not merit federal action. Given the small dollar amounts often involved in such suits, statutory provision for treble damages found in G.S. 75-16 serves two purposes. First, it makes more economically feasible the bringing of an action where the possible money damages are limited, and thus encourages private enforcement. *See,* II Areeda & Turner, Antitrust Law 149-50 (1978), *quoted in Survey of Developments in North Carolina Law, 1980 — Commercial Law*, 59 N.C. L. Rev.____ (1981). Second, it increases the incentive for reaching a settlement. Further provison for attorney fees, found in G.S. 75-16.1, also encourages private enforcement in the marketplace. The dissimilarity in language used by our Legislature in G.S. 75-1.1 and G.S. 75-16.1, in that willfulness *is* specifically mentioned in the latter, was apparently not accidental. The fact that attorney fees may only be awarded upon a specific finding that defendant acted "willfully" indicates, rather clearly we think, that the omission of willfulness, intentional wrongdoing or bad faith as an essential element under G.S. 75-1.1 was deliberate, and supports the result in this case. We further note that G.S. 75-16.1 also provides that an unsuccessful

plaintiff may be charged with defendant's attorney fees should the court find that "[t]he party instituting the action knew, or should have known, the action was frivolous and malicious." This is an important counterweight designed to inhibit the bringing of spurious lawsuits which the liberal damages provisions of G.S. 75-16 might otherwise encourage.

Were we to agree with the Court of Appeals, we think we would seriously weaken the effectiveness of G.S. 75-1.1 and circumvent the intent of the Legislature. For reasons not here addressed the Court of Appeals ordered this cause remanded for a new trial. Except as modified herein, we adopt the opinion of the Court of Appeals. For the reasons stated, the case is remanded to the Court of Appeals with directions that it be further remanded to the District Court, Guilford County for proceedings not inconsistent herewith.

Modified and affirmed.