F. RAY MOORE OIL COMPANY, INC. v. STATE OF NORTH CAROLINA; THOMAS TODD, STATE PURCHASING OFFICER; AND WILLIAM R. RHINEHART, SENIOR STATE PURCHASER

No. 852SC802

(Filed 1 April 1986)

1. Contracts § 27.2— fuel oil supply contract—basis of pricing—breach of contract

   Plaintiff breached a contract to supply fuel oil to the State by basing its price to the State on the posted price of its supplier rather than on the price it was actually paying for the oil. Although plaintiff was required by the terms of its contract to list its principal supplier and notify the State of any change in the commercially posted price, this did not mean that plaintiff did not have to pass on any savings it had in the purchase of fuel oil in light of a specific contract requirement that the State receive full proportionate benefit immediately upon a price decrease.

2. Unfair Competition § 1— fuel oil supply contract—misrepresentation as to supplier—unfair and deceptive trade practice

   The trial court properly found that plaintiff had engaged in an unfair and deceptive trade practice where there was evidence supporting the finding that plaintiff represented to the State that its supplier was Apex Petroleum when plaintiff was purchasing a large part of its fuel supply from other suppliers at a lower price; the State relied on this misrepresentation in paying for the fuel; there was evidence that plaintiff thought it was following the terms of its contract; and there is no reason the State as a consumer cannot take advantage of N.C.G.S. 75-16, even though it cannot be sued under that statute.

3. Contracts § 26— action to construe fuel oil contract—findings supported by evidence

   In an action for a declaratory judgment to construe a fuel oil supply contract in a counterclaim for unfair and deceptive trade practice, there was evidence to support the court's findings of fact as to the average general market price available to plaintiff and that the contract required plaintiff to list its principal source of supply so that defendant could monitor plaintiff's fuel costs, and, while a question as to whether a witness had determined the general market price for fuel may have been irrelevant, the record did not show what the answer would have been and the court could not pass on the question.

APPEAL by plaintiff from *Brown (Frank R.), Judge.* Judgment entered 14 March 1985 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 10 December 1985.

The plaintiff filed this action for a declaratory judgment, praying that the court construe a contract. The defendants counterclaimed asking for treble damages for unfair and deceptive

trade practices. The case was tried by the court without a jury. The evidence showed that the plaintiff responded to an offer to receive bids for the supplying of fuel oil to agencies of the State of North Carolina in eleven southeastern counties for the period from 1 July 1981 through 30 June 1982. The bid specifications provided there could be price adjustments during the contract period and contained the following terms:

    3. PRICE ADJUSTMENTS: Any price changes, downward or upward; which might be permitted during the contract period must be general, either by reason of market change or on the part of the contractor to other customers.

    (a) *Notification:* Immediate notification must be given to the Division of Purchase and Contract, *in writing,* concerning *any* increase or decrease in the commercial posted price. A copy of manufacturers' official notice or other evidence that the change is general in nature must be submitted.

    (b) *Decrease:* The State shall receive full proportionate benefit immediately at any time during the contract period. Fill-up or voluntary discounts allowed other customers during this contract period shall also apply to this contract.

    . . . .

    4. DEFINITIONS: For purposes of this Contract and related documents, the following definitions will apply.

    . . . .

    (b) *Commercial Posted Price:* A price readily available to customers indicating the current rack price, terminal price, posted price, etc., in effect and which is discounted for large wholesale purchasers or government entities.

In accordance with the bid specifications the plaintiff listed its supplier as Apex Petroleum.

There was evidence that the plaintiff adjusted its price on several occasions according to the price posted by Apex. The plaintiff purchased fuel oil from Apex and other suppliers at reduced prices which it did not pass on to the State. If these sav-

ings had been passed on the State would have paid $12,316.43 less for the fuel oil than it paid.

The court made findings of fact in accordance with the evidence and concluded the plaintiff misrepresented to the State the source and price of the oil it sold to the State. The court found further that the State relied on this misrepresentation to its detriment. It found that the plaintiff "by its actions and misrepresentations has engaged in a course of conduct which offends established public policy, is oppressive or substantially injurious to the consumer, or both, thereby constituting an unfair trade practice which necessitates the trebling of damages." The court entered a judgment for the State for $36,949.29.

The plaintiff appealed.

*McMullan & Knott, by James B. McMullan, Jr., for plaintiff appellant.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General T. Buie Costen and Associate Attorney General Victor H. E. Morgan, Jr., for defendant appellees.*

WEBB, Judge.

[1] The first question posed by this appeal is whether it was a breach of contract for the plaintiff to base its price to the State on the posted price of Apex Petroleum rather than on the price it was actually paying for oil, some of which was bought from other suppliers. We hold this was a breach of contract. In the section of the contract dealing with price adjustments paragraph (b) says: "*Decrease:* The State shall receive full proportionate benefit immediately at any time during the contract period . . . ." We believe this means without ambiguity that if the plaintiff were to receive a reduction in the price it paid for oil this reduction was to be passed on to the State.

The plaintiff argues that it was required to base its price to the State on the rack price of Apex and not upon its actual cost. The contract required the plaintiff to list its principal supplier, which was Apex. It also required the plaintiff to notify the State immediately of a change in the commercial posted price. A commercial posted price is defined as "[a] price readily available to customers indicating the current rack price, terminal price,

posted price, etc. . . . ." The plaintiff contends that these re-
quirements in the contract show that the price upon which it
should base its price to the State should be based on the price
charged by Apex. We do not so read these provisions. The plain-
tiff was required by the terms of its contract with the State to
list its principal supplier and notify the State of any change in the
commercially posted price. We do not believe this means the
defendant did not have to pass on any savings it had in the pur-
chase of fuel oil in light of the specific requirement of sub-
paragraph (b) that the State shall receive full proportionate
benefit immediately upon a price decrease.

[2]  Our Supreme Court held in *Hardy v. Toler*, 288 N.C. 303, 218
S.E. 2d 342 (1975) that false representations upon which the other
party relies are unfair and deceptive trade practices. In this case
the Court has found as a fact which was supported by the evi-
dence that the plaintiff represented to the State that his supplier
was Apex when in fact he was purchasing a large part of his fuel
supply from other suppliers at a lower price than the posted price
of Apex. The State relied on this representation in paying for the
fuel. This would be a misrepresentation upon which the State
relied and constitutes an unfair and deceptive trade practice.
There is evidence that the plaintiff thought it was properly
following the terms of the contract in its dealings with the State.
In *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981) it was
held that it is not necessary to prove bad faith to show an unfair
or deceptive trade practice. The good faith of the plaintiff in this
case is irrelevant.

The appellant, relying on *Sperry Corp. v. Patterson*, 73 N.C.
App. 123, 325 S.E. 2d 642 (1985) argues that the State is not a per-
son within the meaning of G.S. 75-16. In *Sperry* we held that the
State could not be sued for an unfair or deceptive trade practice.
It is true that we said in that case that "[t]he State of North
Carolina is not a 'person, firm, or corporation' within the meaning
of G.S. 75-16 . . . ." *Id.* at 125, 325 S.E. 2d at 645. We believe the
proper interpretation of that case should be that the State is not
a person, firm or corporation that can be sued under G.S. 75-16.
The statute is aimed at unfair and deceptive practice by those
engaged in business for profit. The State was not engaged in
business in *Sperry*. There is no reason why the State as a con-

sumer cannot take advantage of G.S. 75-16 if it is the victim of an unfair or deceptive trade practice.

[3] The appellant contends there was not sufficient evidence to support the court's findings of fact as to the average general market price available to plaintiff. An exhibit was offered which was prepared from the plaintiff's records which showed the amount and price of fuel purchased by Moore during the contract period. This supports the findings of fact as to the general market price available to the plaintiff.

The appellant also contends it was error for the court to find as a fact that the contract required the plaintiff to list its principal source of supply so that defendant could monitor plaintiff's cost of fuel. The appellant says this is so because the contract does not say why the principal source of supply must be listed. It is true the contract does not say this but a witness testified to it which supports this finding of fact.

In its last assignment of error the appellant argues it was error to sustain an objection to a question to one of its witnesses as to whether he had determined a general market price for fuel for the period of time of the contract. We cannot pass on this assignment of error because the record does not show what the answer would have been. We do not believe the general market price is relevant. The issue in this case is what was the price at which the plaintiff was able to buy fuel.

Affirmed.

Judges ARNOLD and WELLS concur.