**CENTRAL CAROLINA BANK AND TRUST COMPANY, as Trustee of the William B. Blythe Irrevocable Life Insurance Trust dated October 15, 1990, Plaintiff,**

v.

**SECURITY LIFE OF DENVER INSURANCE COMPANY, Defendant.**

No. CIV.1:01–CV–00814.

United States District Court, M.D. North Carolina.

Feb. 24, 2003.

Josiah S. Murray, III, John Crudup Rogers, Iii, Gwendolyn C. Brooks, Newsom Graham Hedrick & Kennon, Durham, NC, for Plaintiff.

Cynthia Leigh Wittmer, Kevin Lee Chignell, James Carlton Thornton, Parker Poe Adams & Bernstein, Raleigh, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On July 31, 2001, Central Carolina Bank and Trust Company ("Plaintiff") filed a complaint against Security Life of Denver Insurance Company ("Defendant") in the Superior Court of Orange County, North Carolina, alleging breach of contract, violation of statutory lapse notice requirements, and unfair and deceptive business practices. Defendant removed the suit to this court based on diversity.

This matter is before the court on Plaintiff's and Defendant's motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant moves for partial summary judgment as to the claims that it violated the statutory lapse notice requirements and that it engaged in unfair and deceptive business practices. Plaintiff moves for summary judgment as to all claims. For the following reasons, the court will grant Plaintiff's motion in part, deny Plaintiff's motion in part, grant Defendant's motion in part, and deny Defendant's motion in part. As a result, Defendant will be liable for the disputed amount of the life insurance policy in question, but not liable for unfair and deceptive trade practices.

## FACTS

On October 15, 1990, William B. Blythe, M.D., executed the William B. Blythe Irrevocable Life Insurance Trust (the "Trust"). The Trust appointed Plaintiff the trustee and authorized Plaintiff to purchase and own policies of insurance upon Dr. Blythe's life. On November 15, 1990, Defendant issued policy number 001031197 (the "Policy") thereby insuring the life of Dr. Blythe. The Policy consisted of two components. The primary component was whole life insurance and the secondary component was a term insurance rider. At all times after the issuance of the Policy, Plaintiff has owned the Policy in its capacity as trustee of the Trust.

A premium of $4,223.19 was payable to Defendant quarterly on February 15, May 15, August 15, and November 15. The Policy included a thirty-one day grace period and as long as the premium payment was received prior to the end of the grace period, the Policy remained in full effect. Failure to pay the premium prior to the end of the grace period would result in a lapse of the Policy.

The Policy also included an automatic non-forfeiture provision to prevent the loss of all life insurance coverage in the event that a premium remained unpaid after the grace period. The non-forfeiture provision provided two options upon the lapse of the Policy: Option A, which provided paid-up insurance, and Option B, which provided extended term insurance. If the insured failed to elect either option within sixty-two days, Defendant would provide extended term insurance under Option B. Under this option, the cash value of the Policy was automatically used to purchase term insurance in an amount equal to the whole-life component at the time of the lapse.[1]

Defendant mailed Plaintiff the quarterly premium payment requests. Upon receipt of these premium payment requests, Plaintiff would notify Dr. Blythe that a quarterly premium payment was due. Dr. Blythe would send a check to Plaintiff for the premium, which Plaintiff would deposit in its account. Plaintiff would then send Defendant a check drawn on its account as payment of the premium. From the issuance of the Policy on November 15, 1990, through February 15, 2000, this process worked effectively and Plaintiff remitted the premium payments on time. The May 15, 2000, quarterly premium payment, which is the basis of the controversy at bar, however, was never paid.[2]

On April 27, 2000, Defendant mailed Plaintiff the May 15 Premium Payment

1. While the non-forfeiture provision prevented the loss of all insurance coverage in the event the Policy lapsed, it did not prevent the loss of the term insurance rider. Under the termination provision of the term insurance rider, it states that the "rider is not available when the policy is paid-up under option A or on extended term insurance under option B." (Aff. Bierstedt Supp. Def.'s Mot. Partial Summ. J., Ex. A, "Scheduled Term Insurance Rider" at 3.)

2. The primary factual dispute between the parties concerns the receipt of the May 15 Premium Payment Request. Plaintiff contends it never received any notice from Defendant of the May 15 premium due date, while Defendant contends it sent Plaintiff a notice. Plaintiff argues, however, that whether it received the notice is immaterial because, even assuming it received notice of the May 15 premium, the notice Defendant allegedly sent did not conform with the statutory lapse notice requirements of N.C. Gen.Stat. § 58–58–120. Therefore, if the May 15, 2000, notice was insufficient, the Policy was still in full effect at the time of the insured's death and Defendant's refusal to pay the full death benefit under the Policy is a breach of contract. Defendant asserts, however, that the notice did comply with the statutory requirements and as such the Policy lapsed. For the purpose of deciding the motions presently before the court, the issue of whether Plaintiff re-

Request (the "May 15 Premium Notice") for the May 15, 2000, quarterly premium. Plaintiff failed to make the premium payment by the due date. Accordingly, on June 6, 2000, Defendant mailed Plaintiff an "Early Warning Notice" alerting Plaintiff that the May 15 premium had not been paid and that the Policy was in danger of lapsing. The premium remained unpaid, and on July 12, 2000, Defendant sent a letter to Plaintiff informing it that the Policy had lapsed when the May 15 premium was not paid before the end of the grace period. The letter also included a "Request for Reinstatement" for the insured to return to Defendant along with the late premium payment if reinstatement of the Policy was desired. On August 1, 2000, Defendant again sent a letter to Plaintiff informing it of the potential for reinstating the Policy. Then, on October 5, 2000, Defendant notified Plaintiff that, pursuant to the automatic non-forfeiture provision of the Policy, the Policy had been converted to extended term insurance in the amount of $223,708.00 and that the term insurance was in effect until November 24, 2013.

In November 2000, Dr. Blythe's wife, Gloria Blythe, contacted Plaintiff to inquire as to the status of the Policy, stating that she had not paid a premium for some time. On or about November 15, 2000, Plaintiff contacted Defendant and was told by Defendant that the Policy had lapsed due to non-payment of the May 15 premium and that the Policy had been converted to extended term insurance. Defendant informed Plaintiff that to reinstate the Policy it would need to forward a check for the missed premiums together with a request for reinstatement. The reinstatement application stated that Defendant may require additional medical information prior to reinstating the Policy.

On or about November 20, 2000, Plaintiff sent Defendant a completed reinstatement application and a check in the amount of $12,657.00. On November 23, 2000, Defendant notified Plaintiff that it had received the reinstatement application and that it was processing the request. Before the Policy was reinstated, however, Defendant, on December 11, 2000, sent a letter to Plaintiff requesting additional medical information. On December 21, 2000, Dr. Blythe died. Because Defendant did not receive the additional medical information it requested, it was unable to complete the reinstatement process. Accordingly, after Defendant was informed of Dr. Blythe's death, the reinstatement request was closed and the premiums that were submitted with the reinstatement application were refunded to Plaintiff.

Following Dr. Blythe's death, the current dispute arose concerning the proceeds payable under the Policy. Defendant contends that because the Policy lapsed the Policy was converted to extended term insurance worth $223,708.00. Plaintiff contends that the Policy did not lapse, and therefore it is entitled to the full amount of the Policy. The parties dispute the amount of the full benefit, but it is between $454,900.01 and $517,830.00.

In an effort to partially resolve the dispute, counsel for Plaintiff proposed that Defendant pay the undisputed amount of $223,708.00 on the condition that acceptance would not prejudice Plaintiff's right to seek payment of the remaining portion of the death benefit allegedly due under the Policy. Defendant accepted Plaintiff's proposal. After Plaintiff submitted the death claim paperwork, Defendant mailed a check for the undisputed amount. The check that Plaintiff received, however, was stamped with an endorsement.[3]

---

ceived the notice is immaterial, and the court will assume Plaintiff received the notice.

**3.** The endorsement on the reverse side of the check read: "By endorsing this check, Payee

Plaintiff claims that if it had deposited the check with the endorsement this would have effectuated an accord and satisfaction in law, thus discharging the entirety of the difference between what Defendant had paid and what Plaintiff contends was owed. Upon learning that its check had been mailed with the endorsement, Defendant sent Plaintiff an unstamped check along with a letter explaining that the endorsement stamp had been inadvertently applied. Prior to receiving the unstamped check, however, Plaintiff had already initiated the present suit.

## DISCUSSION

### I. Standard of Review

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at

255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### II. Statutory Lapse Notice Requirements

■ Under North Carolina law, an insurer must comply with statutorily prescribed notice requirements prior to terminating an insured's life insurance policy for non-payment of premiums. *Aiken v. Atlantic Life Ins. Co.,* 173 N.C. 400, 408, 92 S.E. 184, 188 (1917). Proper notice is a condition precedent to declaring an insurance policy forfeited or lapsed. *Garland v. Jefferson Standard Life Ins. Co.,* 179 N.C. 67, 101 S.E. 616 (1919). Section 58–58–120 of the General Statutes of North Carolina provides in part:

> No life insurance corporation doing business in this State shall, within one year after the default in payment of any premium ..., declare forfeited or lapsed any policy hereafter issued or renewed, ... nor shall any such policy be forfeited or lapsed by reason of nonpayment, when due, of any premium ... required by the terms of the policy to be paid, within one year from the failure to pay such premium ... unless a written or printed notice stating the amount of such premium ... the place where it shall be paid, and the person to whom the same is payable has been duly addressed and mailed, postage paid, to the person whose life is insured, or to the assignee or owner of the policy, ... at least five and not more than 45 days prior to the day when the same is payable as regards policies which do contain a provision for grace or are entitled to

agrees full payment, satisfaction and discharge has been made by Maker and fully releases Maker from any and all claims the

Payee, his/her heirs, successors or assigns may have now or hereafter under the Policy." (Pl.'s Mem. Supp. Mot. Summ. J. at Ex. 19.)

grace in the payment of premiums. The notice shall also state that unless such premium ... then due shall be paid to the corporation or to the duly-appointed agent or person authorized to collect such premiums, by or before the day it falls due, the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy, as in the contract provided. If the payment demanded by such notice shall be made within its time limit therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment; and no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of 30 days after the mailing of such notice.

N.C. Gen.Stat. § 58–58–120 (2001).

■ As an initial matter, the court must determine which of the notices mailed by Defendant are relevant to the issue of whether Defendant complied with the statutory notice requirements. The plain language of the statute states that the notice of non-payment must be sent "at least five and not more than 45 days prior to the day when the [premium] is payable." *Id.* The Policy premium that Plaintiff failed to pay was due on May 15, 2000. Defendant mailed the May 15 Premium Notice on April 27, 2000, eighteen days before the premium was due. The other notices mailed by Defendant, namely the June 6, 2000, notice, the July 12, 2000, notice, the August 1, 2000, letter, and the October 5, 2000, letter, however, were all sent after the due date of the May 15, 2000, premium. Accordingly, because the May 15 Premium Notice is the only notice that was sent prior to the premium due date, in determining whether Defendant complied with the statutory requirements of Section 58–58–120, the court will refer to only the May 15 Premium Notice.

■ Defendant contends that the May 15 Premium Notice complied with the statute. The notice included the amount of the premium, the due date, and the place where the payment should be sent. The notice also included a statement that referred Plaintiff to the terms of the Policy for information concerning the grace period.[4] Contained in the grace period section of the Policy is the following language: "If the policy renewal premium is not paid by the end of the grace period, your policy lapses and is no longer in full force as of the due date." (Aff. Bierstedt Supp. Def.'s Mot. Partial Summ. J., Ex. A at 12.)

Plaintiff contends that the May 15 Premium Notice did not comply with Section 58–58–120. Plaintiff argues that the statement on the May 15 Premium Notice directing it to refer to the terms of the Policy for information about coverage and grace period is insufficient. Plaintiff argues that the notice, in order to comply with the plain language of the statute, must state that the Policy will become "forfeited and void" if the premium is not paid.

Defendant asserts, however, that it was not required to include the exact language of the statute regarding forfeiture because such language is inapplicable to the policy at issue. Defendant argues that the Policy was never forfeited because it was automatically converted to an extended term policy under the Policy's non-forfeiture provision. Accordingly, application of the exact language from the statute to the Policy, Defendant argues, would have been misleading and inaccurate. Defendant further argues that the requirements of Section 58–58–120, which was most recently

---

**4.** The statement on the May 15 Premium Notice reads: "For additional information about coverage and grace period, please refer to your policy."

amended in 1945, are "illogical and do not apply to many modern insurance policies," such as the policy at issue here. (Def.'s Mem. Resp. Pl.'s Mot. Summ. J. at 5.)

■ Defendant's argument regarding the applicability of this statute to modern and more sophisticated insurance policies is one that is more appropriately addressed to the North Carolina General Assembly. The decision to change the notice requirements of the law as presently drafted is one within the exclusive discretion and province of the legislature. The court's function and duty is not to change the statute to account for new and more sophisticated insurance policies. Rather, the function and duty of the court is to interpret the law as currently written. *See Union Carbide Corp. v. Offerman,* 351 N.C. 310, 314, 526 S.E.2d 167, 170 (2000) (" 'Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " (quoting *State v. Camp,* 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974))).

The legislature by enacting Section 58–58–120 established certain criteria that must be complied with prior to declaring an insurance policy lapsed or forfeited. Among these criteria is the requirement that "[t]he notice shall ... state that unless [the] premium ... then due shall be paid ... by or before the day it falls due, the policy and all payments thereon will become *forfeited and void.*" N.C. Gen. Stat. § 58–58–120 (emphasis added). The clear import of this statutory requirement is to place the policy owner on notice of the consequences of non-payment of the premium. The May 15 Premium Notice, however, did not contain this statement. Nor did the Notice contain a statement remotely similar. At a minimum, the stat-ute requires that the notice contain a statement concerning the effect of non-payment. A notice merely directing a policy owner to refer to its policy about coverage and grace period is insufficient to satisfy Section 58–58–120's mandate that the notice itself state that the policy "will become forfeited and void" for non-payment of the premium.

■ It follows, therefore, that because Defendant failed to comply with the statutory notice requirements of Section 58–58–120, Defendant cannot declare the Policy lapsed "within one year after the default in payment of any premium." Accordingly, the Policy remained in full force and effect for an additional one year grace period. The default of payment occurred on May 15, 2000. The one-year grace period therefore did not expire until May 15, 2001. Because Dr. Blythe, the insured, died within the statutory one-year grace period, Dr. Blythe's beneficiaries are entitled to the full death benefit under the Policy. Therefore, the court will grant Plaintiff's motion for summary judgment and deny Defendant's motion for summary judgment as to the issue of liability on the breach of contract claim and the claim that Defendant violated the statutory notice requirements. However, there still exists a material issue of fact concerning the amount due under the Policy. Plaintiff contends the full death benefit of the Policy is $517,830.00 while Defendant contends the full value of the Policy is $454,900.01. Thus the issue of the amount due under the Policy cannot be resolved at this time.

### III. Unfair and Deceptive Trade Practices

■ In order to establish a violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1.1, a plaintiff must show: (1) an unfair and deceptive trade practice; (2) in or affecting commerce; and (3) which

proximately caused injury to the plaintiff. *First Atl. Mgmt. Corp. v. Dunlea Realty Co.,* 131 N.C.App. 242, 252, 507 S.E.2d 56, 63 (1998). A practice is unfair and deceptive "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "Moreover, where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice." *Gray v. North Carolina Ins. Underwriting Ass'n,* 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (citing *Johnson v. First Un. Corp.,* 128 N.C.App. 450, 458, 496 S.E.2d 1, 6 (1998)). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75–1.1 is a question of law for the court." *Id.*

▮ Section 58–63–15 of the North Carolina General Statutes defines unfair methods of competition and unfair or deceptive acts or practices in the insurance industry. Enumerated within this section is a list of unfair claim settlement practices. The North Carolina Supreme Court has held that when an insurer engages in any practice or act specifically prohibited under Section 58–63–15(11), it "also engages in conduct that embodies the broader standards of N.C.G.S. § 75–1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Id.* at 71, 529 S.E.2d at 683. Accordingly, a violation of Section 58–63–15(11) constitutes an unfair and deceptive trade practice in violation of N.C. Gen. Stat. § 75–1.1 as a matter of law. *Gray,* 352 N.C. at 71, 529 S.E.2d at 683; *Country Club of Johnston County v. United States Fid. and Guar. Co.,* 150 N.C.App. 231, 246, 563 S.E.2d 269, 279 (2002).

Plaintiff contends that Defendant engaged in conduct prohibited under Section 58–63–15(11) and therefore violated Section 75–1.1 as a matter of law.[5] Specifically, Plaintiff argues: (1) that Defendant did not attempt in good faith to settle Plaintiff's claim in violation of Section 58–63–15(11)(f);[6] (2) that Defendant compelled Plaintiff to institute litigation to recover amounts due under the Policy in violation of Section 58–63–15(11)(g);[7] (3) that Defendant attempted to settle Plaintiff's claim for less than Plaintiff was entitled to recover in violation of Section 58–63–15(11)(h);[8] and (4) that Defendant failed to promptly provide a reasonable explanation for its refusal to pay the full death benefit in violation of Section 58–63–15(11)(n).[9]

5. Defendant argues that Plaintiff's allegations that Defendant failed to attempt to settle Plaintiff's claim in good faith, compelled Plaintiff to institute litigation to recover amounts due under the Policy, and refused to provide Plaintiff a reasonable explanation for Defendant's refusal to pay the full death benefit were not included in the complaint and therefore should not be considered by the court. The court is satisfied based on the complaint, correspondence between counsel referenced in the complaint, and Defendant's own motion for summary judgment, that Defendant had sufficient notice of Plaintiff's claims.

6. Section 58–63–15(11)(f) provides: "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

7. Section 58–63–15(11)(g) provides: "Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in action brought by such insured."

8. Section 58–63–15(11)(h) provides: "Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled."

9. Section 58–63–15(11)(n) provides: "Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation

■ Plaintiff's allegation that Defendant did not attempt in good faith to settle Plaintiff's claim and that Defendant compelled Plaintiff to institute litigation in violation of Section 58–63–15(11)(f) and (g), respectively, is premised on the proposition that because Defendant failed to provide proper notice, the Policy remained in full legal force, and therefore Defendant's unwarranted refusal to pay the full death benefit constituted, as a matter of law, an unfair claim settlement practice. Plaintiff's position presupposes that Defendant's liability for the full death benefit was clearly established. This, however, is not the case.

Defendant reasonably believed that it was not liable for the full death benefit. Defendant mailed on April 27, 2000, the May 15 Premium Notice. Within this notice, Defendant provided what it contends was sufficient information to comply with the statutory notice requirements. Plaintiff failed to pay the May 15 premium, and after mailing several additional notices informing Plaintiff of the non-payment-of the May 15 premium, Defendant declared the Policy lapsed. The Policy was eventually converted to an extended term policy pursuant to the Policy's non-forfeiture provision.

■ Section 58–63–15(11)(f) prohibits an insurance company from not attempting in good faith to effectuate prompt settlement of claims in which liability has become "reasonably clear." Defendant's liability for the full death benefit, however, was not reasonably clear. A legitimate issue existed as to whether the May 15 Premium Notice complied with the statutory notice requirements of Section 58–58–120. If the notice complied with Section 58–58–120, then Defendant was correct in declaring the Policy lapsed and therefore would not be liable for the full death benefit. If, however, the notice did not comply with Section 58–58–120, then Defendant was incorrect in declaring the Policy lapsed and would be liable for the full death benefit. Nevertheless, advocating a position that is ultimately determined to be incorrect does not necessarily demonstrate a lack of good faith in attempting to settle a claim. *See Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.,* No. 00–2115, 2001 WL 565317, at \*5–6 (4th Cir. May 25, 2001) (rejecting plaintiff's claim that insurer violated N.C. Gen.Stat. § 58–63–15(11)(f) because insurer had "reasonable basis to challenge the validity of [plaintiff's] submitted claim").

■ Similarly, Plaintiff argues that Defendant violated Section 58–63–15(11)(g) because Defendant compelled it to institute litigation due to Defendant's unlawful refusal to pay the Policy's full death benefit. Section 58–63–15(11)(g), however, only prohibits an insurer from compelling an insured to institute litigation to recover *amounts due* under a policy. Again, at the time Plaintiff filed the current suit it was not clearly established what amounts were due under the Policy. Both positions asserted by the parties with regard to the statutory compliance of the May 15 Premium Notice were reasonable positions. That the court agrees with Plaintiff's position that the full death benefit is due under the Policy does not render Defendant's position frivolous.

To accept Plaintiff's position that Defendant violated Sections 58–63–15(11)(f) and (g) because Defendant refused to pay the full death benefit that the court subsequently determined Defendant was liable for would make an insurer strictly liable

to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

for damages any time its pre-trial assessment of a claim proved to be incorrect.

The fact that the insurer is ultimately unsuccessful in its policy defense does not render the insurer liable for a bad-faith refusal to settle claims provided that the insurer's actions were reasonable, and the insurer had probable cause to pursue its defense. Therefore, the insurer should not be held liable for extracontractual damages where there is a legitimate controversy as to whether benefits are due or the amount of such benefits.

14 George J. Couch, *et al.*, *Couch on Insurance* § 204:21 (3d ed.1999).

There is no evidence that demonstrates any unfair or deceptive conduct on the part of Defendant. To the contrary, Defendant from the beginning of the disagreement between the parties regarding the amount due under the Policy actively attempted to resolve the dispute. When Plaintiff proposed that Defendant pay Plaintiff the undisputed sum of $223,708.00 on the condition that acceptance would not prejudice Plaintiff's right to seek payment of the remaining disputed portion, Defendant accepted this proposal. After Plaintiff submitted the appropriate paperwork, Defendant provided a check for the undisputed amount plus accrued interest from the date of Dr. Blythe's death. Furthermore, as to the amount in dispute, Defendant had a good faith argument for its position that it provided the appropriate notice. Thus, because Defendant acted in good faith to settle the claim, paid the undisputed portion that was due under the Policy, and asserted a reasonable position with regard to the disputed amount, Plaintiff cannot establish as a matter of law that Defendant violated Sections 58–63–15(11)(f) and (g).

■ Plaintiff further argues that Defendant violated Section 58–63–15(11)(h) by attempting to effectuate a wrongful accord and satisfaction. Plaintiff and Defendant agreed that Defendant would pay the undisputed amount due under the Policy without adversely affecting Plaintiff's right to seek payment of the disputed amount. Upon receipt of the check representing the undisputed amount plus interest, Plaintiff discovered that the check was stamped with an endorsement that read: "By endorsing this check, Payee agrees full payment, satisfaction and discharge has been made by Maker and fully releases Maker from any and all claims the Payee, his/her heirs, successors or assigns may have now or hereafter under the Policy." (Pl.'s Mem. Supp. Mot. Summ. J. at Ex. 19.) Plaintiff contends that, by including this endorsement on the check in the face of the existing agreement to pay the undisputed portion without prejudice, Defendant attempted to settle the claim for less than the amount to which a reasonable man would have believed he was entitled.

■ The North Carolina Supreme Court in declaring that a violation of Section 58–63–15(11) constitutes as a matter of law an unfair trade practice reasoned that the unfair claim settlement practices enumerated in the statute were "inherently unfair, unscrupulous, immoral, and injurious to consumers." *Gray*, 352 N.C. at 71, 529 S.E.2d at 683. Thus, in evaluating whether Defendant by including the endorsement on the check violated Section 58–63–15(11)(h), it is appropriate for the court to evaluate the underlying circumstances to determine whether these circumstances demonstrate that Defendant's conduct was "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403.

Defendant claims that the endorsement stamp was inadvertently placed on Plaintiff's check. Defendant had explicitly agreed that it would pay the undisputed

portion. This agreement was memorialized in several written communications between counsel for Plaintiff and Defendant. In a March 16, 2000, letter sent by Defendant to Plaintiff, counsel for Defendant, Charles Van Devander, stated:

I wanted to confirm that we are willing to pay the undisputed part of the death benefit without creating any prejudice or adversely affecting any other rights of any of the parties to make claim for or seek payment of the amount in dispute. This payment could be made as soon as we receive the appropriate claim paperwork.

(Pl.'s Mem. Supp. Mot. Summ. J. at Ex. 16.) There is no evidence that indicates Van Devander directed or instructed anyone to affix the endorsement stamp to Plaintiff's check, which would have been contrary to the agreement he reached with Plaintiff's counsel. Rather, Defendant has explained that it was its standard practice to stamp all claim checks to be paid with the endorsement. Furthermore, the manager of Defendant's Benefits Department, Nora Boydstun, testified that she was unaware of the agreement between counsel for Plaintiff and Van Devander, and there is no evidence that shows the personnel responsible for printing, stamping, and mailing the check were aware of the agreement. The only evidence before the court is that, unknown to Van Devander and Boydstun, an employee on Boydstun's team stamped Plaintiff's check with the endorsement, and the check was mailed to Plaintiff.

The fact that it took four months between the mailing of the stamped check and the subsequent issuance of the replacement check is cited by Plaintiff as evidence that the endorsement stamp was not inadvertent. How this is evidence of Defendant's unfair and deceptive conduct escapes the court. Boydstun and Van Devander both testified that there was no decision made to stamp Plaintiff's check with the endorsement and that they were unaware the endorsement had been affixed.

Upon receipt of the check and discovery of the endorsement stamp, there is no evidence that shows Plaintiff immediately contacted Defendant to notify it that the check had been improperly stamped with the endorsement legend. Instead, Defendant claims it was first made aware of the inadvertently stamped check when Plaintiff served the summons and complaint in this case. A few weeks after receiving notice that the check had been stamped with the endorsement legend, Defendant issued a new check without the endorsement legend for the undisputed amount plus additional interest. In an August 22, 2001, letter, Van Devander wrote that "[b]ecause we do not dispute that the insured is entitled to a payment of $226,453.79, we are forwarding a check in that amount plus interest .... This check does not include the endorsement legend that was inadvertently stamped on the back of [the] check ... issued on April 24, 2001." (Aff. Bierstedt Supp. Def.'s Mot. Partial Summ. J. at Ex. S.)

Viewing the facts and drawing all reasonable inferences in the light most favorable to Plaintiff, there is no evidence that demonstrates that Defendant's conduct was immoral, oppressive, or unscrupulous. Defendant agreed in writing to pay Plaintiff the undisputed amount owed under the Policy without any prejudice to Plaintiff's right to contest the disputed amount. Defendant inadvertently stamped Plaintiff's check with the endorsement legend. When the endorsement was brought to the attention of Defendant, Defendant remedied the mistake by issuing a new check with additional interest and without the endorsement stamp. Plaintiff's right to contest the disputed amount was not adversely affected. Because there is no evi-

dence that demonstrates that Defendant's conduct was immoral, unethical, or unscrupulous, Defendant's attempt to settle Plaintiff's claim for less than the amount which the court has ultimately determined to be due cannot as a matter of law be in violation of Section 58–63–15(11)(h).

■ Finally, Plaintiff argues Defendant violated Section 58–63–15(11)(n) by failing to promptly provide a reasonable explanation for its denial of Plaintiff's claim. On January 5, 2001, counsel for Plaintiff wrote Defendant a letter explaining why Plaintiff believed that under North Carolina General Statute Section 58–58–120 the Policy never lapsed and that Defendant was required to pay the full death benefit of the Policy. On January 23, 2001, Van Devander replied to Plaintiff's counsel and explained why the lapse of the Policy was valid. Van Devander explained that Defendant had sent several letters concerning the Policy and its lapse in 2000 and enclosed copies of these letters for Plaintiff's review. Van Devander also explained that according to Defendant's corporate records the notice for the missed premium that resulted in the lapse of the Policy was sent to Plaintiff on April 27, 2000. A copy of Defendant's billing register for April 27, 2000, was included in the letter. After reviewing the statutory provision cited by Plaintiff's counsel, Van Devander informed Plaintiff that "it is our belief that we have met all statutory notice requirements." (Pl.'s Mem. Supp. Mot. Summ. J. at Ex. 14.)

On March 1, 2001, counsel for Plaintiff wrote back to Van Devander and further explained Plaintiff's assertion that the full death benefit was owed. Van Devander responded to that letter on March 16, 2001, explaining that Defendant was "still researching the notice requirement issue" Plaintiff raised and that Defendant was willing to pay Plaintiff the undisputed part of the death benefit. (*Id.* at Ex. 16.) On April 25, 2001, Van Devander sent Plaintiff a letter informing Plaintiff that, after researching the issue,

> it is our position that the appropriate notice was given in accordance with the N.C.G.S. § 58–58–120. The four letters which you have discussed declare the policy lapsed after the 30 day time period had expired. It is our belief the original premium notice, which was mailed April 27, contained the appropriate notice.

(*Id.* at Ex. 18.)

Plaintiff obviously disagreed with the position taken by Defendant that proper notice was provided. Yet Plaintiff's disagreement with that position does not give rise to a finding that Defendant failed to provide promptly a reasonable explanation. Defendant responded to each of Plaintiff's letters in a timely fashion. Defendant researched the issue raised by Plaintiff, provided Plaintiff with the documents supporting its position, and came to a conclusion contrary to Plaintiff's position. It is not clear what more Defendant could have provided or what more Plaintiff expected. Defendant's explanation was both timely provided and reasonable. Nothing about Defendant's conduct in providing its explanation evidences any immoral, unethical, or unscrupulous behavior. Therefore, as a matter of law, Defendant did not violate Section 58–63–15(11)(n).

## CONCLUSION

For the reasons set forth in this opinion, the court will deny Defendant's motion for partial summary judgment as to the failure to comply with the statutory notice requirements claim and grant Plaintiff's motion for summary judgment as to the issue of liability on the breach of contract claim and the failure to comply with the statutory notice requirements claim. The parties

dispute the exact amount of the full death benefit due under the Policy, and therefore this issue cannot appropriately be decided at this time. The court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for partial summary judgment as to the unfair and deceptive trade practices claim.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion for partial summary judgment [Doc. # 24] is **DENIED** as to the failure to comply with the statutory notice requirements claim.

IT IS ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment [Doc. # 21] is **GRANTED** as to the issue of liability on the breach of contract claim and the failure to comply with the statutory notice requirements claim.

IT IS ORDERED that Plaintiff's motion for summary judgment [Doc. # 21] as to the unfair and deceptive trade practices claim is **DENIED.**

IT IS ORDERED AND ADJUDGED that Defendant's motion for partial summary judgment [Doc. # 24] as to the unfair and deceptive trade practices claim is **GRANTED** and said claim is **DISMISSED.**